People ex rel. Hill v Navas (2025 NY Slip Op 51417(U))

[*1]

People ex rel. Hill v Navas

2025 NY Slip Op 51417(U)

Decided on September 8, 2025

Supreme Court, Queens County

Dunn, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 8, 2025
Supreme Court, Queens County

The People of the State of New York ex rel. 
 Eben Hill, Director, Mental Hygiene Legal Service, on behalf of Agustin B.G., Petitioner,

against
John Navas, M.D., Director of Psychiatry, Queens Hospital Center, Respondent.
The People of the State of New York ex rel. Eben Hill, Director, Mental Hygiene Legal Service, 
 on behalf of CINDY N., Petitioner,
against
JOHN NAVAS, M.D., Director of Psychiatry, Queens Hospital Center, Respondent.

Index No. 501665/2025

For the petitioner
Mental Hygiene Legal Services
3333 New Hyde Park Road, Suite 306
New Hyde Park, New York 11042
By: Dylan F. Nelsen-Epstein, Esq.
For the Respondent
McAloon & Friedman, P.C.
1 State Street Plaza, 23rd Floor
New York, New York 10004
By: Fernando Mercado, Esq.

Scott Dunn, J.

I. INTRODUCTION
These matters involve petitions for writs of habeas corpus filed pursuant to CPLR Article 70 seeking release of two patients at the Queens Hospital Center ("QHC") or ("Hospital"). Petitioners contend that they are being unlawfully detained. Both of these cases involve the application of the due process clause to the layers of statutes which form the Mental Hygiene Law ("MHL"). And indeed, it is the "'layers of professional [and judicial] review' contained in the New York State Mental Hygiene Law's elaborate notice and hearing provisions, including notice to relatives and others designated by the patient, and the availability of a judicial hearing within five days of demand by the patient, relative or friend, as well as habeas corpus relief" that ensures that the statute meets procedural due process requirements (Project Release v Prevost, 722 F2d 960, 975 [2d Cir 1983]).
Against this backdrop, Petitioners argue that the standards for procedural due process are only satisfied when the provisions of the MHL are complied with in full. Perhaps. But perhaps not, as the central case that Petitioners rely on, People ex rel. Delia v Munsey (26 NY3d 124, 133 [2015]), specifically holds that "not . . . every violation of the Mental Hygiene Law amounts to a due process violation or will entitle a patient to a writ of habeas corpus . . . "
On the other hand, Respondent argues that as part of the due process calculus, the mental health of the petitioner may be considered. Perhaps. But perhaps not, since the legality of a patient's retention under CPLR Article 70 "can be determined on the basis of . . . whether the appropriate procedures have been followed, without the need for a hearing into their mental state" (Munsey, 26 NY3d at 130-131). With this in mind, the Court proceeds to review the relevant statutes.

II. STATUTORY FRAMEWORK

A. MHL § 9.40
As in the instant matters, a prospective psychiatric patient's first encounter with the psychiatric medical system is often through a Comprehensive Psychiatric Emergency Program ("CPEP"). MHL § 9.40, entitled "Emergency observation, care and treatment in comprehensive psychiatric emergency programs" provides in relevant part that: 
(a) The director of any comprehensive psychiatric emergency program may receive and retain therein for a period not to exceed seventy-two hours, any person alleged to have a mental illness for which immediate observation, care and treatment in such program is appropriate and which is likely to result in serious harm to the person or others . . . The director shall cause triage and referral services to be provided by a psychiatric nurse practitioner or physician of the program as soon as such person is received into the comprehensive psychiatric emergency program. After receiving triage and referral services, such person shall be appropriately treated and discharged, or referred for further crisis intervention services including an examination by a physician as described in subdivision (b) of this section.
(b) The director shall cause examination of such persons not discharged after the provision of triage and referral services to be initiated by a staff physician of the program as soon as practicable and in any event within six hours after the person is received into the program's emergency room. Such person may be retained for observation, care and treatment and further examination for up to twenty-four hours if, at the conclusion of such examination, such physician determines that such person may have a mental illness for which immediate observation, care and treatment in a comprehensive psychiatric emergency program is appropriate, and which is likely to result in serious harm to the person or others.
(c) No person shall be involuntarily retained in accordance with this section for more than twenty-four hours, unless (i) within that time the determination of the examining staff physician has been confirmed after examination by another physician who is a member of the psychiatric staff of the program and (ii) the person is admitted to an extended observation bed, as such term is defined in section 31.27 of this chapter. At the time of admission to an extended observation bed, such person shall be served with written notice of his status and rights as a patient under this section. Such notice shall contain the patient's name. The notice shall be provided to the same persons and in the manner as if provided pursuant to subdivision (a) of section 9.39 of this article . . . (e) If at any time within the seventy-two hour period it is determined that such person continues to require immediate observation, care and treatment in accordance with this section and such requirement is likely to continue beyond the seventy-two hour period, such person shall be removed within a reasonable period of time to an appropriate hospital authorized to receive and retain patients pursuant to section 9.39 of this article [*2]and such person shall be evaluated for admission and, if appropriate, shall be admitted to such hospital in accordance with section 9.39 of this article, except that if the person is admitted, the fifteen day retention period of subdivision (b) of section 9.39 of this article shall be calculated from the time such person was initially registered into the emergency room of the comprehensive psychiatric emergency program . . . (f) Nothing in this section shall preclude the involuntary admission of a person to an appropriate hospital pursuant to the provisions of this article if at any time during the seventy-two hour period it is determined that the person is in need of involuntary care and treatment in a hospital and the person does not agree to be admitted to a hospital as a voluntary or informal patient. Efforts shall be made to assure that any arrangements for such involuntary admissions in an appropriate hospital shall be made within a reasonable period of time . . .
(h) All time periods referenced in this section shall be calculated from the time such person is initially registered into the emergency room of the comprehensive psychiatric emergency program.
B. MHL § 9.39
Thereafter, if the person is not released, as an alternative, the patient can be admitted under an emergency basis pursuant to MHL § 9.39, entitled "Emergency admissions for immediate observations, care, and treatment." MHL § 9.39 provides in relevant part that:
(a) the director of any hospital maintaining adequate staff and facilities for the observation, examination, care, and treatment of persons alleged to be mentally ill and approved by the commissioner to receive and retain patients pursuant to this section may receive and retain therein as a patient for a period of fifteen days any person alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to themself or others . . .
The director shall admit such person pursuant to the provisions of this section only if a staff physician of the hospital upon examination of such person finds that such person qualifies under the requirements of this section. Such person shall not be retained for a period of more than forty-eight hours unless within such period such finding is confirmed after examination by another physician who shall be a member of the psychiatric staff of the hospital. Such person shall be served, at the time of admission, with written notice of their status and rights as a patient under this section. Such notice shall contain the patient's name. At the same time, such notice shall also be given to the mental hygiene legal service and personally or by mail to such person or persons, not to exceed three in number, as may be designated in writing to receive such notice by the person alleged to be mentally ill.
(b) Within fifteen days of arrival at the hospital, if a determination is made that the person is not in need of involuntary care and treatment, he shall be discharged unless he [*3]agrees to remain as a voluntary or informal patient. If he is in need of involuntary care and treatment and does not agree to remain as a voluntary or informal patient, he may be retained beyond such fifteen day period only by admission to such hospital or another appropriate hospital pursuant to the provisions governing involuntary admission on application supported by medical certification and subject to the provisions for notice, hearing, review, and judicial approval of retention or transfer and retention governing such admissions, provided that, for the purposes of such provisions, the date of admission of the patient shall be deemed to be the date when the patient was first received under this section . . . 
C. MHL § 9.27
Finally, a patient may be involuntarily admitted under MHL § 9.27. MHL § 9.27, entitled "Involuntary admission under medical certification" provides in relevant part that:
(a) The director of a hospital may receive and retain therein as a patient any person alleged to be mentally ill and in need of involuntary care and treatment upon the certificates of two examining physicians, or upon the certificates of an examining physician and a psychiatric nurse practitioner. Such certificates shall be accompanied by an application for the admission of such person. The examination may be conducted jointly but each certifying practitioner shall execute a separate certificate . . .
(d) . . . Nothing in this section shall prohibit or invalidate any involuntary admission made in accordance with the provisions of this chapter.
(e) The director of the hospital where such person is brought shall cause such person to be examined forthwith by a physician who shall be a member of the psychiatric staff of such hospital other than the original examining physicians or psychiatric nurse practitioner whose certificate or certificates accompanied the application and, if such person is found to be in need of involuntary care and treatment, they may be admitted thereto as a patient as herein provided.
D. MHL § 9.07
MHL § 9.07 entitled "Notice to patients of their rights and of the availability of the mental hygiene legal services" sets forth the notice requirements relating to the admission of patients under these provisions. MHL § 9.07 provides in relevant part that:
(a) Immediately upon the admission of any patient to a hospital or upon his conversion to a different status, the director shall inform the patient in writing of his status, including the section of this chapter under which he is hospitalized, and of his rights under this article, including the availability of the mental hygiene legal service. At any time thereafter, upon the request of the patient or of anyone on the patient's behalf, the patient shall be permitted to communicate with the mental hygiene legal service and avail himself of the facilities thereof.

 III. STATEMENT OF FACTS
A. AGUSTIN B.G.
Agustin B. G. ("Petitioner G.") arrived at the QHC at 8:35 p.m. on July 31, 2025, and was admitted to the Hospital at 9:30 p.m., pursuant to MHL § 9.40, as part of the CPEP, following an examination by Dr. Srinivas Rao. This is reflected in a form entitled CPEP Emergency Admission, Form OMH 476 (see Petitioner Agustin G.'s Petition for Writ of Habeas Corpus Pursuant to CPLR Article 70 ["Agustin G. Petition"], Exhibit A). On the back of the form is a section captioned, "Examinations to Confirm Need for Retention Beyond 24 Hours in an Extended Observation Bed." That section was not filled out (Agustin G. Petition, Exhibit A). At that time, a document entitled Notice of Status and Rights CPEP Emergency Admission, OMH Form 476SR, was served by the doctor on Petitioner G. (Agustin G. Petition, Exhibit A).
Petitioner G. was then examined on August 1, 2025, by Dr. Akm Quyyum at 2:10 p.m., and Dr. Syed Hasan at 2:18 p.m. (Agustin G. Petition, Exhibit B, and OMH Form 471A). Both of these doctors certified that Petitioner G. was in need of involuntary care and treatment pursuant to MHL§ 9.27, due to mental illness (Agustin G. Petition, Exhibit B). On that date, Dr. Kamalendra Sen, the chief of the CPEP, signed Form OMH 471, applying for Petitioner G.'s admission to the Hospital under MHL § 9.27, and providing him with a document entitled "Notification of Status and Rights Involuntary Admission on Medical Certification" (Agustin G. Petition, Exhibit B, OMH Form 471 SR1). 
On August 3, 2025, at 11 a.m., Dr. Saad Ferdous Ahmed signed part B of OMH Form 471, which has the caption "Psychiatrist's Confirmation of Need for Involuntary Care and Treatment in Hospital" (Agustin G. Petition, Exhibit B). Petitioner G. was then admitted to the inpatient unit on August 4, 2025, at 6:45 p.m. and remains a patient in the Hospital and is being held pursuant to MHL § 9.27 (see Respondent's Opposition to Petition for Writ of Habeas Corpus Pursuant to CPLR Article 70 ["Respondent Agustin G. Opposition"] ¶ 10; Respondent Agustin G. Opposition, Exhibit B).
B. CINDY N.
Cindy N. ("Petitioner N.") arrived at QHC on July 30, 2025, and was examined by Dr. Syeda Marzia and admitted to the Hospital at 6:00 p.m., pursuant to MHL § 9.40 (see Petitioner Cindy N.'s Petition for Writ Of Habeas Corpus Pursuant to CPLR Article 70 ["Cindy N. Petition"], Exhibit A, OMH Form 476). At that time, Petitioner N. was served with a document entitled Notice of Status and Rights CPEP Emergency Admission (Cindy N. Petition, Exhibit A, OMH Form 476SR).
On July 31, 2025, at 1:45 p.m., Petitioner N.'s status was converted to MHL § 9.39 (Cindy N. Petition, Exhibit A), and she was served with notice of her admission papers at that time (Cindy N. Petition, Exhibit A, OMH Form 474). Thereafter, on August 1, 2025, a subsequent examination of Petitioner N. was held. This examination and its results are reflected in the second page of OMH Form 474, under the heading captioned, "Emergency Admission [*4]Section 9.39 Mental Hygiene Law, Examination to Confirm Need for Extension of Emergency Admission Beyond 48 hours." According to Petitioner N., this form was never served (Cindy N. Petition, ¶ 6). 
Thereafter, on August 13, 2025, Petitioner N.'s status was converted under MHL § 9.27. Petitioner N. remains a patient in the Hospital (Respondent's Opposition to Petition for Writ of Habeas Corpus Pursuant to CPLR Article 70 ("Respondent's Cindy N. Opposition") ¶ 7; Respondent's Cindy N. Opposition, Exhibit A).

IV. LEGAL DISCUSSION
A. AGUSTIN B.G.
Petitioner G. asserts that his present retention is unlawful because "page two of the [MHL] § 9.40 admission form permitting retention beyond 24 hours was never filled out. Instead, the Hospital transferred [Petitioner G.] to Queens Hospital Center, which attempted to convert him to § 9.27 status at 11:00 a.m. on August 3, 2025, two days after his § 9.40 status expired" (Agustin G. Petition, ¶ 6). In sum, accordingly, Petitioner G. argues, that his retention is unlawful as it is violative of his due process rights in that Respondent failed to comply with the statutory procedural requirements for retention (Agustin G. Petition, ¶ 11).
Respondent concedes that the second page of the MHL § 9.40 status papers, OMH Form 476, was not filled out. However, Respondent asserts that Petitioner G.'s retention was not unlawful as it "timely adhered to the requirement to have another examination by a psychiatrist within 24 hours by converting [Petitioner G.'s] legal status to MHL § 9.27" (Respondent Agustin G. Opposition, ¶ 8). Respondent further asserts that Petitioner G. "underwent two examinations with certifications on August 1, 2025, and the application was signed the same day [and Petitioner G.] was noticed of his legal status under 9.27 the same day as well. Part B of form OMH 471 was properly signed on August 3, 2025, within ten days prior to his admission to the inpatient unit. [Petitioner G.] was admitted to the inpatient unit from the CPEP on August 4, 2025, at 6:45 p.m." (Respondent's Agustin G. Opposition, ¶ 10). Finally, Respondent asserts that the court should also consider Petitioner G.'s mental health and conditions related to it, in evaluating the Petition (Respondent's Agustin G. Opposition, ¶¶ 11-12).
As a threshold matter, an argument could be made that prior to the expiration of the 24-hour period referenced in MHL § 9.40 that Petitioner G. had been effectively converted to MHL § 9.27 status. Indeed, and consistent with the requisites of that statute, two examining physicians had certified the need for Petitioner G.'s involuntary care and treatment, and those certificates were accompanied by an application for admission (Agustin G. Petition, Exhibit B, OMH Form 471A (Dr. Quyyum)). That Petitioner G. had been effectively converted to MHL § 9.27 status is further evidenced by the OMH 471 form served on him, which specifically provides that he had been admitted on August 1, 2025, under MHL § 9.27 (see Agustin G. Petition, Exhibit B, Form OMH 471SR1). As such, if Petitioner G.'s status was converted to MHL § 9.27 within the 24-hour period, then retention was specifically authorized under that statute, and neither MHL § 9.40, nor any documents related to it, were applicable to Petitioner G.'s retention (see MHL § [*5]9.40[f]).
Weakening this argument, however, is the fact that MHL § 9.27(e) specifically provides that admission occurs only after the patient is examined by a member of the hospital's psychiatric staff other than the doctors whose certifications accompanied the application for admission, and a finding made that the patient is in need of involuntary care and treatment. Here, that examination and determination was made on August 3, 2025, at 11:00 a.m., 61.5 hours following admission. Further, Respondent appears to concede that admission under MHL § 9.27 did not take place until August 4, 2025 (Respondent's Agustin G. Opposition, ¶ 10).
As such, if Petitioner G. had not converted to status under MHL § 9.27 then he remained in status under MHL § 9.40. That statute requires that an examination be conducted to confirm the need to retain a patient beyond the 24-hour time period (MHL § 9.40 [c]). There is no doubt that the form related to the MHL § 9.40 has not been filled out. And that may be because an examination under MHL § 9.40 was not conducted. But in reality, it effectively was. Indeed, two separate physicians examined Petitioner G. during this 24-hour time period and certified that Petitioner G. needed to be retained. And a third physician, under penalty of perjury, attested to Petitioner G.'s condition and filed an application to secure his retention (Agustin G. Petition, Exhibit B). Further, on August 1, 2025, Petitioner G. received notice within this 24-hour period of his status and the Hospital's efforts to retain him (Agustin G. Petition., Exhibit B, OMH Form 471SR1).
It may be that the back of the OMH 476 should have been filled out to formally reflect the need to retain Petitioner G. But perhaps not, as Petitioner G. was at least in the process of converting to MHL § 9.27 status. And further, there is no requirement in any event, that the back of the form be provided to him. Rather, as set forth in OMH Form 476 itself, a written status of rights need only be given to the patient at the time of the admission itself, which occurred on August 1, 2025, at 9:30 p.m. Indeed, providing additional notice to him on OMH Form 476 would have created confusion, given his transition to MHL § 9.27 status and notice being provided to him relating to that status. 
But most importantly, from a substantive standpoint, at least three doctors confirmed his need for retention during the 24-hour period. And Petitioner G. was provided with notice of the need to retain him.
Finally, MHL § 9.40(f), specifically provides that "[n]othing in this section shall preclude the involuntary admission of a person to an appropriate hospital pursuant to the provisions of this article if at any time during the seventy-two hour period it is determined that the person is in need of involuntary care and treatment in a hospital and the person does not agree to be admitted to a hospital as a voluntary or informal patient. Efforts shall be made to assure that any arrangements for such involuntary admissions in an appropriate hospital shall be made within a reasonable period of time . . . " Here, within that 72-hour time period, four doctors had determined the need to retain Petitioner G., and within 96 hours Petitioner G. was admitted to the Hospital.
In sum, it is not clear that under the circumstances here, there even was a statutory violation in not filling out the back of OMH form 476. But, even if there was one "not . . . every violation of the MHL amounts to a due process violation . . . " (Munsey, 26 NY3d at 133).
Indeed, here, the court finds that no less than three doctors, in writing, confirmed the need to retain Petitioner G. That within that 24-hour time period, Petitioner G. was provided with notice of the determination to retain him. That within 72 hours, a fourth doctor also confirmed the need to retain Petitioner G. And that within 96 hours, Petitioner G. was admitted to the Hospital. Finally, Petitioner G. was not even entitled to receive notice of the second page of the MHL § 9.40 Form being filled out. Under those circumstances, the court finds that Petitioner G. was provided ample due process, and certainly the process due him.
B. CINDY N.
Petitioner N. asserts that her present retention is unlawful, as she "was never served with the completed version of her admission papers [Form OMH 474, page 2)] including the second physician's confirmation" (Cindy N. Petition, ¶ 8). In support of her argument, Petitioner N. cites to People ex rel. Neville v Linder, 81 Misc 3d 802 [Sup Ct Queens County 2023], where the court found that the failure to serve the second page of the OMH 474, which contains information relating to the confirmatory examination for an extension of an emergency admission past 48 hours, constituted a due process violation (Cindy N. Petition, ¶ 15).
Respondent opposes the petition and claims that the procedures set forth in the MHL were satisfied, as Petitioner N. was provided with written notice of her status and rights at the time of admission (Respondent's Cindy N. Opposition, ¶ 4). Further, Respondent objects to the application of People ex rel. Neville v Linder, to the instant matter (Respondent's Cindy N. Opposition ¶ 9). Finally, Respondent believes that the mental health of Petitioner N. should be considered in the due process calculus (Respondent's Cindy N. Opposition, ¶¶ 12-13).
As a threshold, but dispositive matter, MHL § 9.39(a) specifically provides that a person admitted under MHL § 9.39 "shall be served, at the time of admission, with written notice of their status and rights as a patient under this section." That requirement is similarly set forth on the Form itself (Form OMH 474, section I[C]). That notice was served on Petitioner N. on July 31, 2025, at the time of admission (see Cindy N. Petition, Exhibit B, OMH Form 474, Notice of Status and Rights Emergency Admission [July 31, 2025]). Neither the statute nor the Form contain any requirement, that any additional service be made after that. As such, Respondent fully complied with the statute, as there is no requirement that page 2 of the OMH form 474, which is by definition prepared after admission, be served.
In addition to the above, but importantly, Respondent complied with all substantive requirements of the statute. Indeed, MHL § 9.39 requires that within 48 hours, a confirmatory examination be held. Here, such examination was held and documented on the Form on August 1, 2025, within 24 hours of the MHL § 9.39 admission (Cindy N. Petition, Exhibit A, OMH Form 474). Indeed, this was the third doctor that had examined Petitioner N. within a 40-hour period.
As such, the court finds that no violation of the MHL occurred. But even if one did "not . . . every violation of the MHL amounts to a due process violation . . . " (Munsey, 26 NY3d at 133).
Here, the court finds no statutory violation occurred, as there is no requirement that Petitioner N. be served with the second page of OMH Form 474, which documents the confirmation of the need to retain the patient beyond 48 hours. But even if there was such a requirement, the court finds that such confirmation was affected and documented on the Form (Cindy N. Petition, Exhibit A). Further, notice was provided to Petitioner N. of her admission under MHL § 9.39 (Cindy N. Petition, Exhibit A). And, in addition, she had been seen by three doctors within a 40-hour period. Under those circumstances, the court finds that Petitioner N. was provided ample due process, and certainly the process due her.[FN1]

V. 
 CONCLUSION
This court has not shied away from issuing decisions to ensure that the liberty interests of patients such as the Petitioners are protected. For example, in Matter of Sullivan (Gladstone R.), 84 Misc 3d 1238(A) [Sup Ct, Queens County 2024], the court ruled that the Hospital could not shave the hair of the petitioner despite an outbreak of lice, as there were less restrictive treatment alternatives. And then again, in Matter of Ladapo (Pierina F.), 85 Misc 3d 860 [Sup Ct, Queens County 2024], the court ruled that administration of psychotropic medication to the petitioner improperly infringed on her liberty interest and that of her fetus. Finally, in Matter of Ladapo (Altagracia D.), 85 Misc 3d 1235(A) [Sup Ct, Queens County 2025], the court concluded that the administration of psychotropic medication also improperly infringed on petitioner's liberty interest.
Here, Petitioners allege a violation of their due process rights. If Petitioners claim is a violation of substantive due process then nothing about their treatment or care here "shocks the conscience" (see Rochin v California, 342 US 165 [1952]). Indeed, no challenge whatsoever is [*6]made relating to the quality of their care, which appears to have been professional and attentive.[FN2]
If their claim is one of procedural due process then Petitioners have certainly been provided with more than sufficient notice of their status, condition, and an opportunity to be heard (see Mathews v Eldridge 424 US 319 [1976]).
Petitioners certainly find themselves in a very difficult and unfortunate circumstance. Therefore, they need all the protection they can get, including that set forth in the MHL. And indeed, as authorized under the MHL, Petitioners have been scheduled for a hearing where they can seek release based on their mental health status. That hearing, as well as the other actions taken in their cases, ensure that Petitioners have been provided with the requisite due process necessary to protect them.
Accordingly, it is hereby,
ORDERED that the Petitioners' applications are denied.
This constitutes the Decision and Order of the Court.
Dated: September 8, 2025
Long Island City, New York
SCOTT DUNN, J.S.C.

Footnotes

Footnote 1:Under the circumstances here, People ex rel. Neville v Linder, 81 Misc 3d 802 [Sup Ct Queens County 2023] cited to by Petitioner N., a scholarly and well-written decision, is inapposite. First, that matter is distinguishable in that it involved a scenario where the OMH Form 474 was not even filled out. Here, it was. Accordingly, the apparent violation in that case of the MHL, which involves the failure to fill out the form, is not present here. Secondly, that case is distinguishable in that it does not involve a substantive treatment of the issue of whether the second page of the OMH Form 474 even had to be served under the MHL. Here, it is a central issue of discussion. Finally, to the extent the case can be read as grafting a due process requirement regarding service of the second page of OMH Form 474 onto MHL § 9.39, which this court does not believe, as written, the decision actually does, such legal argument is not raised by Petitioner N. here. Nor could she, as central to Petitioner's argument is that the Hospital has "failed to follow the mandates of Mental Hygiene Law § 9.39 . . . " (Cindy N. Petition, ¶ 10).

Footnote 2:Respondent asserts that the court can consider the mental health of the Petitioners in evaluating their Petitions. The court need not address this issue, as its resolution is not necessary to the disposition of these cases.